Good morning, your honors. May it please the court. Jenna Beyer on behalf of petitioner Alfredo Parada Calderon, who is listening from ICE detention in California City. I would like to reserve five minutes of my time for rebuttal. Okay. Alfredo has never had a full and fair hearing on his claim for mandatory torture relief. He asked this court to remand with instructions to send his case back to the immigration judge so that he can present expert testimony with the help of counsel. There are two independent pathways for this court to get there. The first pathway would be finding that the agency deprived Alfredo of his due process right to counsel when the IJ denied his claim seven days after he won his BIA appeal. The second path would be finding that the agency abused its discretion in denying Alfredo's motion to reopen based on new individualized evidence of his high risk of torture. I will address these each in turn. First, as to the deprivation of the right to counsel. Under this court's case law in Usubakhanov, Biwat, and other cases, determining whether the right to counsel has been violated is a fact-specific inquiry involving looking at what is a reasonable amount of time to procure counsel, the number of continuances requested, and any barriers to securing counsel. All of these factors favor Alfredo. Alfredo was extraordinarily diligent in pursuing his right to counsel as evidenced by the fact that he managed in the difficult circumstances of detention to secure pro bono representation in his BIA appeal. And after the board remanded for necessary fact-finding by the IJ, he immediately took steps to secure trial counsel. Five days later on June 25th, a friend of the court filed a letter indicating that multiple organizations were vetting his case for representation and that there was new evidence relating to his risk of torture. Despite this, at the merits hearing on June 27th, one week after the board's decision, the IJ denied his request for a continuance to find counsel as a quote, inconvenience to the court and prevented him from presenting new evidence. As this court held in Usubakhanov, we cannot allow a myopic insistence upon expeditiousness to render the right to counsel an empty formality. And that is exactly the case here. If we don't agree with your other argument that the IJ had to reopen the record to allow new evidence on remand, what purpose would counsel have served? In other words, I guess I'm getting to a prejudice question as to what difference it might have made on the direct appeal side of things to the appointment of new counsel. Certainly, your honor. Well, as this court is aware, when there's a deprivation of a right to counsel at a merits hearing, there's no showing of prejudice required. But I think counsel would have been able to present expert testimony regarding his individualized risk of torture. And I believe that the IJ was required to open the record and consider that evidence. When you look at the regulations implementing the Convention Against Torture at 8 CFR 1208.16c, they state very clearly all evidence relevant to the possibility of future torture shall be considered. It's a shall obligation. And here, the board said, we're remanding for additional fact-finding, for further necessary fact-finding. And you have a pro se litigant who is saying, I'm looking for counsel and I have these pieces of material evidence that increase my risk of torture and respond directly to the prior bases for the IJ's denial of his case. And so we think that while prejudice does not need to be shown for a deprivation of the right to counsel, he clearly has done so here. And this compels remand with instructions to send his case back to the immigration judge. Second, I'd like to turn to the board's error in denying his motion to reopen, which was based on new individualized evidence that he faces an extremely high risk of torture or death in El Salvador under the current state of exception. We know from this court's decisions in Cole, in Velasquez-Samayoa, and Castillo that the agency has to give reasoned consideration to potentially dispositive expert testimony. And we know from Bassin and from Cower and from Lomisco that statements supporting a motion to reopen must be taken as true unless they are inherently unbelievable. But the board did not engage at all with the individualized predictions about Alfredo's fate, much less accept them as true. Here, Alfredo presented three expert statements opining on why he has a uniquely high risk of being tortured or killed in El Salvador. The board only mentions one of those expert statements and entirely ignores the other two. This is exactly the case of Cole versus Holder, where the court held that the agency abused its discretion by only mentioning one expert and not addressing at all the other expert testimony. Importantly, the agency does not discuss the unique risk to Alfredo as a former member of a rival gang of MS-13 who has gang-related tattoos and a distinct appearance, and that these factors put him at uniquely high risk. And so I will point the court to the three expert statements that the board entirely failed to consider, much less take as true as is required under this court's precedent. Dr. Montgomery predicts that Alfredo's unique characteristics put him at an extremely high risk of torture by prison officials because of his criminal record, his extensive tattoos, and because U.S. officials have identified him as a gang member. Dr. McNamara also opines, I believe Mr. Parada would be severely injured or killed if he were forced to return to El Salvador. And then we have Martin Flores, expert on the sociology of gangs, who wrote that he would be viewed as an enemy and a high-value target. Taking as true these expert statements, which the agency must on a motion to reopen, the record compels the conclusion that he has met his prima facie burden for reopening. I would point the court to two published decisions by the Ninth Circuit which remand with instructions to grant reopening outright, Bassin v. Gonzalez and Mohammed v. Gonzalez. In both of those cases, the court determined the agency has already had a reasoned opportunity to render its judgment. We, as an appellate court, can determine that these petitioners have met their prima facie burden, and so we are going to remand with specific instructions that reopening is required. Can you address whether the board abused its discretion by requiring statistical analyses under Benedicto? Absolutely. We believe that the board abused its discretion by inventing essentially a new rule that demands false precision in the realm of cat determinations. The record shows that the Bukele administration goes through great lengths to conceal its abuses in secrecy, and yet the record is replete with information about the regularity and the prevalence of torture, and so this citation to Benedicto for the proposition that quantitative data or, you know, precise statistical data is required is misplaced, because actually in Benedicto, what the court held was that the individual petitioner who had a generalized fear that he would be tortured in Dominican prisons had only shown instances of torture in those prisons and that there were a range of different conditions in the prisons, and so the holding of Benedicto is not what the agency has applied in this case and in other cases, that you have to somehow come up, pull out of a hat numbers to show that you are at 50.1 percent risk or not. Well, what they said was they wanted more than anecdotal evidence. Yes, your honor, and I believe that the Department of State report, the Krista Saal Human Rights report, the Amnesty International report, the Human Rights Watch report, all of these reports collect and systematize accounts of torture of hundreds of individuals. Abuse of discretion in typifying the evidence is only anecdotal. I'm sorry, can you repeat the Yes, so the BIA abused its discretion in finding that the evidence was only anecdotal. Yes, your honor, and we believe that they are setting up this sort of false dichotomy between on the one hand perfect clarity and statistics regarding someone's individualized risk of torture versus on the other hand anecdotes, and they characterize the Department of State report as presenting anecdotal evidence, which this court has never viewed Department of State reports to be merely anecdotal. I would also point the court to, again, the regulations which provide an itemized list, a non-exhaustive list of types of evidence that can be presented to support a cat claim. Credible evidence alone can be sufficient to meet someone's burden. The other examples that the regulations give are evidence of past torture, evidence of gross, flagrant, or mass human rights abuses, and other information about the country conditions. Nowhere in those regulations and nowhere in this court's case law have we demanded this kind of false precision that the agency is doing here. I see that I am out of time and I will reserve the remainder of my time for rebuttal. Great, thank you. Thank you. Thank you. May it please the court, Ann Burley for the Attorney General. These consolidated petitions show the agency did not err in the denial of petitioner's application for Convention Against Torture Relief, and I'll start with the motion to reopen, which is the primary focus of petitioner's opening brief and reply brief, and particularly the evidence at issue that was submitted along with the motion to reopen. A motion to reopen must state new facts to be considered, and the board reasonably determined that the majority of the evidence submitted was not based on new or previously unavailable evidence from the time of petitioner's February 2024 hearing. The board concluded that the country conditions demonstrated a continuation of the abuse of suspected gang members in detention that has been ongoing since the start of the state of exception in March 2022. So even though the reports post-date the prior reports, they contain much of the same content. So what petitioner points to as new in the motion to reopen at AR 24 and 25. Pardon me, if I understood you correctly, you're saying that the new material simply says the same as the old material, but the old material said continued torture. So the prior materials have mixed evidence on the record of the state of prisons in El Salvador. For example, they show, as the board noted, very harsh conditions, and the new materials also demonstrate very harsh conditions in the prisons in El Salvador. So even though the materials post-date, in terms of whether they're qualitatively different, they have much of the same content. Considering this court's decision in Najmabadi, where this court determined that the motion to reopens materials, though voluminous, they didn't represent qualitatively new content. Was that responsive to your question, Your Honor? More or less. I mean, can I ask, you know, some of these, Dr. Montgomery's report, for example, reports on the prevalence of torture in prisons as recently as November of 2024. You have human rights reports that talk about widespread torture in the Salvadoran prisons. It seems like there's, even if the BIA found some of it to be cumulative of older evidence, there's quite a bit new evidence that, especially from the expert reports, that the BIA just never seemed to really address in any detail. So why doesn't that provide a problem under our case law about needing to give reasoned consideration to this very probative and material evidence? I'll start with the proposed expert reports generally, Your Honor, and then turn to Dr. Montgomery's report specifically. Although the board must consider all evidence, it need not expressly refute on the record every single piece of evidence submitted, Lindy Holder, and the board doesn't have to write an exegesis on every contention, just must show that the board heard and thought and not merely reacted. Considering these reports submitted, the reports, including Dr. Montgomery's, contain categorical, broad, and sweeping statements supported primarily by country conditions and anecdotal evidence. The agency is not required to supplant the other country conditions evidence with this evidence. In Don V. Gonzalez, this court held that the agency is not required to interpret the evidence in the manner advocated by Petitioner, and although Petitioner emphasizes these reports, they do contain much of the same evidence as the other country conditions reports. Let me just take a step back. There are country conditions evidence, and then there's the evidence in the expert reports that are specific to Mr. Calderon about his own status with gang tattoos, having been convicted of killing an MS-13 gang member, his status as a gang member in the Mexican mafia at one point in time. All of those things are individualized considerations relative to his risk of harm, particularized risk, and Dr. Montgomery said that he had a near 100 percent chance of being tortured if he fell into a cell at or in prison gang, and the BIA made no mention of those individualized considerations, and so it's one thing to talk about generalized country conditions evidence, even as widespread as this happens to be, but there's also the combination of that with individualized expert attention to something that it seems to me the BIA, it was incumbent on the BIA to address, and it didn't here. So can you react to that observation? Yes, your honor. To start, this court has addressed, excuse me, the board did address with significant indicia of the fact that it reacted to the new evidence. For example, the board's decision did specifically reference the new country conditions evidence and Dr. Montgomery's report at AR5, just not in the context of the 100 percent likelihood of torture that Dr. Montgomery asserted. At AR5, the board notes that Dr. Montgomery's report described an interview with a police chief who said they no longer have daily arrest quotas in El Salvador. But for example, there's no, unless I'm missing this, there's no mention of his gang tattoos, of his status as a former Mexican gang member, of his conviction for this particular crime. None of those individualized details are mentioned by the BIA. Am I correct in that? Your honor, I believe that those details are captured by the board's decision at AR5 that petitioner has demonstrated a reasonable likelihood that he could be detained. So the fact of his, that's at AR6, the fact of his tattoos and gang membership does demonstrate a reasonable likelihood of his detention. And so what's at issue is whether, based on the new evidence, he demonstrated that he would also be tortured once detained or if detained. And turning to Dr., I guess for a little bit. May I, counsel, may I ask a question? Yes, your honor. The thing I find the most troubling about the BIA decision is that, is this sentence, well, we do not condone the treatment described in the evidence presented. Antidotes, no matter how disturbing, can't substitute for quantitative evidence, which is what the CAT requires. And that's simply a false statement of the law, in my view, because the CAT doesn't require quantitative evidence. It requires a consideration of all the evidence and then judging whether he has a 50% chance or not. It does not sanction under the regulations and the law that the BIA limit itself to considering only quantitative evidence. So isn't that this legal error? Your honor, no. I agree with you that there is no requirement of a strict mathematical formula here, but the more likely than not standard does entail necessarily some degree of weighing of the evidence and of measuring that something is more likely than not. As a shorthand, we refer to that often as an above 50% likelihood or 51%. I agree with you. That's like, but it can be 51% based on all sorts of evidence, not quantitative evidence. And we, I think we have several opinions that have said that, that you can't require, the BIA cannot require quantitative evidence. In fact, we've also another line of our authority talks about how individualized evidence is required, individualized, not general quantitative statistics. And I think he's just misstating as a legal matter what CAT requires. Your honor, respondent's position is that quantitative evidence is appropriate to demand in the CAT context. On our brief pages 31 to 32, we go into this in more detail and describe how this court's precedent has required evidence to show that, for example, in Salazar that in CAT, the generalized evidence would need to show that over half of similarly situated people would end up tortured. And looking to what the board actually did here. Can I pause you there? Because I don't think that's correct. To Judge Wardlaw's point, the CAT analysis is about an individualized inquiry. So if we were to take your argument that you have to, you know, for a category of people that you have to prove that more than half might be tortured, you know, if, if 94,000 people are arrested in El Salvador under this policy, are you suggesting that someone would have to prove that 42,000 of them are subject to torture in order for someone to prevail on a CAT claim? Your Honor, if all that's at issue, yes, is generalized evidence, the evidence would have to give the reasonable probability that over half of similarly situated people would be tortured. So for example, in Artigo Morales v. Bondi, this court acknowledged that there have been, there has been evidence of instances of torture in El Salvador under the state of exception, but that the evidence did not establish that the majority of individuals detained under the state of exception are tortured, nor that the petitioner at issue in that case. So the government's point of view is that a majority of the people detained have to be tortured for an individual to make out a CAT claim? What is the meaning behind particularized evidence then, if that's the case? That seems like an impossible standard to meet. Not to mention, I mean, you could have far fewer people be tortured and it would still present a high likelihood of torture for an individual person, even if 1,000 people were tortured a year, right? It doesn't have to be 42,000. It, it could be much less and yet still present a greater than 50% chance for an individual that they might fall into that circumstance, right? Your Honor, yes, this is a very high burden to meet and particularized risk is usually met by evidence such as past torture, evidence of past torture or particularized evidence such as a credible death threat against a petitioner, looking to some of past cases where past torture has been, excuse me, where a likelihood of future torture has been demonstrated. Looking to the evidence here, the country conditions reports are very far from demonstrating that over half of people in the prison system end up getting tortured or worse. So just looking to the evidence here in this record at AR 187, for example, it shows that at least 867 people died in detention and that there've been at, this is at other parts in the record, AR 2,140, 3,275 complaints of police mistreatment, but the volume of prisoners is, the number of prisoners is approximately 84,000 at that time. So even considering, you know, some degree of statistical challenges in measurement, we're very far from the more likely than not standard, given the facts at issue in this record and the evidence presented. So first of all, the more likely than not standard itself is actually not a high standard at all. It's, you have over 50, you know, you know, you suggested 51%. That's, an individual could have a 51% chance that he would be tortured because of who he is and how he presents. But why do you think that requires, I think you're falling into the same analytical trap that the BIA did in trying to quantify a general population versus is there an individual like, more likely than not that this particular petitioner, if deported, would be tortured? Yes, Your Honor, to respond to your question, I'd like to first address what the board did in the motion to reopen. At AR-6, the board weighed all of the evidence, new and old, and evaluated all of that evidence and came to the conclusion that petitioner has not demonstrated a reasonable likelihood that he would be detained. So considering the board's analysis, I'd say that I agree with Your Honor's description of the challenges of quantifying the likelihood of torture. But what the agency did here was absolutely within the correct framework of a CAT analysis, which was consider all of the evidence, weigh the evidence, and come to a likelihood determination. And so our inquiry here on a discretion standard is to determine whether the board made that determination without rational explanation, etc. And in this case, the board demonstrated through citations to, for example, Dr. Montgomery's report and the other evidence of record that the board thoughtfully weighed the evidence here. And that decision was reasonable. Turning to the cases where this has discussed. Counselor, you're out of time, so if you want to start to wrap up. Thank you, Your Honors. To conclude, the court should deny this petition because petitioner has not met his burden for either the motion to reopen or his merits petition on the basis of the anecdotal evidence submitted and generalized country conditions. So this petition should be denied. Thank you. I'd like to take a moment to address the burden issue. My friend on the other side repeatedly states more likely than not. But I want to draw the court's attention to the fact that for a The evidence of record coupled with the new evidence warrants a new hearing. We have clearly met that threshold screening standard here. The evidence is new, as Your Honor, Judge Sanchez pointed out. The evidence post dates his the majority of the evidence post states his last individual hearing. The expert reports rely on new data and research that has come out of El There are numerous human rights reports that did not exist at the time of his original hearing. And not only was this evidence new and previously unavailable, but it's material to his particular claim. And to the extent that there is a requirement to quantify the level of risk that an individual faces, he presents that information here. Judge Sanchez, you were that because he will be imprisoned, he will face both conditions that are intended to be torturous and also the widespread policy and practice of torture. And Alfredo is not asking for perfection here. He is asking for a full and fair chance to prove the of what he is asserting. He's never had that, and I respectfully request that the court give him that here. Thank you, counsel. Thank you both for your arguments. The matter will stand submitted and court is adjourned.
judges: WARDLAW, BEA, SANCHEZ